**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-90558 |
| **PARADOX RESOURCES, LLC,** *et al.,* | § | |
| | § | Chapter 11 |
| Debtors.[1] | § | |
| | § | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) PROHIBITING UTILITY COMPANIES FROM
ALTERING, REFUSING OR DISCONTINUING SERVICE, (II) DEEMING
UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE,
(III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE
<u>ASSURANCE OF PAYMENT, AND (IV) GRANTING RELATED RELIEF</u>**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 3:30 P.M. (PREVAILING CENTRAL TIME) ON MAY 24, 2023.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 24, 2023 AT 3:30 P.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**
>
> **PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE JONES' HOME PAGE. THE MEETING CODE IS "JUDGEJONES". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Paradox Resources, LLC (7152); Paradox Midstream, LLC (2127); Paradox Upstream, LLC (0256); Capital Commercial Development, Inc. (3124); Neuhaus Barrett Investments, LLC (5529); Four Corners Energy, LLC (8159); and Four Corners Pipeline, LLC (8748). The Debtors' service address is: 500 Dallas Street, Suite 1600, Houston, Texas 77002.

> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JONES' HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Paradox Resources, LLC, *et al.*, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby file this *Emergency Motion for Entry of An Order (I) Prohibiting Utilities From Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* (the "Motion"), and in support hereof, respectfully state as follows:

## I.  JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this Motion are sections 105 and 366 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## II.  BACKGROUND

**A.  In General**

3. On May 22, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

5. The Debtors are a Houston-based independent midstream and upstream company focused on helium processing and sales, as well as oil and gas production. The Debtors operate primarily in the Paradox Basin in southern Utah and Colorado, near what is commonly referred to as the Four Corners region. The Debtors' operations are divided amongst three integrated business segments: Paradox Midstream, Paradox Upstream, and Paradox Downstream.

6. Midstream owns and operates the sole natural gas processing plant in the Paradox Basin (the "Lisbon Plant") and more than 521 miles of rich gas gathering pipelines. The Lisbon Plant, located approximately 35 miles southeast of Moab, Utah in the Lisbon Valley, is a 60 MMcfd treating plant with 1.1 MMcfd of helium processing capacity made up of purification and Liquefaction capabilities, a 45 MMcfd cryogenic plant, and a 10 MBpd fractionation train. The Lisbon Plant was specifically engineered to process the natural gas from the Paradox Basin that typically contains high amounts of carbon dioxide, hydrogen sulfide, nitrogen, and helium. Midstream's gathering system includes: (i) approximately 262 miles of wholly owned and operated pipelines; and (ii) approximately 259 miles of pipelines operated under agreements with the Navajo Nation.

7. Upstream owns and operates six conventional fields with 119,000 net acres held-by-production in the McCracken, Leadville, Ismay, La Sal, Honaker Trail and Cutler formations in the Paradox Basin. Finally, the Debtors' downstream segment markets and sells helium,

fractionated propanes, butanes, and natural gases directly to end-users and local markets at a premium over wholesale.

8. Beginning in or around 2020, the Debtors began experiencing issues with cash flow and liquidity. The global pandemic created a payables overhang that eventually proved too difficult for the company to overcome. The Debtors' issues worsened in 2023 due to a combination of factors including commodity price fluctuations, including a steep decline in the price of natural gas, and operational and regulatory issues which proved unsolvable due to a lack of sufficient working capital. Prior to the Petition Date, the Debtors engaged Evercore Group L.L.C. ("Evercore") to provide financial advisory services to the Debtors in connection with the evaluation of strategic and financial alternatives. Evercore was able to identify potential strategic purchasers providing indications of interest reflecting substantial value in the Debtors' assets. Additionally, in February 2023, Evercore identified a ready, willing, and able strategic lender who proposed a new lending facility to pay down existing secured debt and other obligations, fund planned capital expenditures, and provide working capital. Unfortunately, the Debtors' pre-petition secured lender, Washington Federal Bank, N.A. ("WaFd" or "Prepetition Lender"), refused to consent to the new lending.

9. Following the failed new financing, the Debtors have continued to negotiate with the Prepetition Lender in an effort to access the liquidity necessary to stabilize the Debtors' operations. To date, those efforts have not been fruitful. Additionally, the Debtors have engaged with potential third-party lenders to obtain debtor-in-possession financing.

10. On May 17, 2023, the Prepetition Lender sent a Notice of Default and Acceleration to the Debtors prompting the voluntary commencement of these Chapter 11 Cases.

**B.     The Utility Providers**

11.    Utility services are essential to the Debtors' abilities to sustain their operations while the Chapter 11 Cases are pending. To operate their businesses, both at Debtors' facilities in Houston and in the field where the Debtors conduct operations and manage projects for their customers, the Debtors incur utility expenses for electricity, water, telecommunications, internet, and other similar services (collectively, the "Utility Services"). These services are provided by approximately fifteen (15) different utility providers (the "Utility Providers"), with which the Debtors maintain accounts. A non-exhaustive list (the "Utilities Service List") identifying the Utility Providers is attached hereto as **Exhibit A** and incorporated by reference herein.[2]

12.    As of the Petition Date, the Debtors owed approximately $1,025,246.09 on account of prepetition Utility Services. The Debtors spend an aggregate amount of approximately $235,970.00 per month on Utility Services from the Utility Providers. Most, if not all, of the Debtors' Utility Providers do not hold any deposits from the Debtors.

13.    Except as described herein, the Debtors have established satisfactory payment histories with Utility Providers and have made payments on a regular and timely basis. As of the Petition Date, the Debtors were in arrears on their electricity and gas accounts with Rocky Mountain Power, in the total estimated amount of $1,024,208.21.[3] To the best of the Debtors' knowledge, there were no other material defaults or arrearages with respect to undisputed

---

[2] The listing of any entity on **Exhibit A** is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code. The Debtors reserve all rights to further address the characterization of any particular entity listed on **Exhibit A** as a Utility Provider at any time and to seek an immediate refund of any utility deposit without effect to any right of setoff or claim asserted by such Utility Provider against the Debtors. This Motion does not seek an assumption or rejection of any executory contract under section 365 of the Bankruptcy Code, and the Debtors reserve the right to claim that any contract with Utility Providers is or is not an executory contract. The relief requested herein is with respect to all Utility Providers and is not limited to only those listed on **Exhibit A**.

[3] The Debtors are performing under a payment plan with respect to past due amounts owed to Rocky Mountain Power.

5

invoices for prepetition Utility Servicers as of the Petition Date. The Debtors intend to pay any post-petition obligations for Utility Services in a timely fashion and in the ordinary course.

14. Continued and uninterrupted Utility Services is vital to the Debtors' ability to sustain their operations and maintain the value of their businesses during these Chapter 11 Cases. Because of the nature of the Debtors' operations, termination or interruption of the Debtors' Utility Services, even for a brief period, would dramatically impair the Debtors' ability to conduct business and would cause considerable inconvenience to the Debtors' employees as they transition into the Chapter 11 Cases and undertake their duties as debtors in possession under the direction of the Chief Restructuring Officer. If Utility Providers are permitted to terminate or disrupt service to the Debtors, the Debtors' operations, and thus primary revenue source, will be threatened.

### III. RELIEF REQUESTED

15. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto: (i) prohibiting the Utility Providers from altering, refusing, or discontinuing service on account of prepetition invoices; (ii) deeming Utility Providers adequately assured of future performance prior to the expiration of the thirty (30) day period set forth in section 366(c)(2) of the Bankruptcy Code; and (iii) establishing procedures for determining adequate assurance of payment.

### A. Proposed Adequate Assurance of Payment

16. The Debtors intend to pay all post-petition obligations owed to the Utility Providers in a timely manner and expect that revenue generated from business operations and/or funds from cash collateral, subject to and consistent with the terms of any cash collateral order entered and accompanying budget approved by the Court in these Chapter 11 Cases, will be

sufficient to pay all undisputed post-petition invoices for Utility Services. To provide adequate assurance of payment for future Utility Services to the Utility Providers as set forth in section 366(c) of the Bankruptcy Code, the Debtors propose to provide the following adequate assurance:

    a. The Debtors propose to deposit $235,970.00 (*i.e.*, an initial sum equal to the Debtors' estimated average costs for one (1) month of Utility Services) in a segregated, non-interest bearing account (the "Adequate Assurance Account") within twenty (20) days of the date of the entry of the order granting the relief requested herein, subject to and consistent with any cash collateral order entered and accompanying budget approved by the Court in these Chapter 11 Cases (the "Adequate Assurance Deposit"); and

    b. The Adequate Assurance Deposit shall remain in the Adequate Assurance Account during the pendency of the Chapter 11 Cases and may be applied to any post-petition defaults in payments to the Utility Providers; *provided*, *however*, the Debtors may reduce the Adequate Assurance Deposit amount in the event that their relationship with any Utility Provider ends as a result of a vacating office space, terminating Utility Services, or otherwise. In that event, the Debtors may reduce the Adequate Assurance Deposit by the portion escrowed for any Utility Provider whose relationship has been terminated.

17. With the funds in the Adequate Assurance Account, the Debtors will have $235,970.00 in total Adequate Assurance Deposits, an amount approximately equal to the Debtors' average monthly usage. The Debtors submit that the Adequate Assurance Account, together with the Debtors' demonstrated payment history, payment plans with Rocky Mountain Power, and the ability to use post-petition financing to pay for future Utility Services in the ordinary course of business, provides protection well in excess of that required to grant adequate assurance to the Utility Providers in satisfaction of section 366 of the Bankruptcy Code.

**B.    The Adequate Assurance Procedures**

18. To address the rights of a Utility Provider under section 366(c)(2) of the Bankruptcy Code, and in light of the severe consequences to the Debtors of any interruption in

services by the Utility Providers, the Debtors propose the following procedures (the "Adequate Assurance Procedures") for approval and adoption:

a. Absent compliance with these Adequate Assurance Procedures, a Utility Provider may not alter, refuse or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these Chapter 11 Cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges.

b. Within three (3) business days after the entry of the order granting the relief requested in this Motion, the Debtors will serve a copy of the order on the Utility Providers on the Utility Service List. In the event that any Utility Provider has been omitted from the Utility Service List, the Debtors shall supplement the Utilities Service List and shall promptly serve a copy of the order on such Utility Provider upon learning of such omission.

c. If a Utility Provider is not satisfied with the proposed adequate assurance provided by the Debtors, the Utility Provider must first make a request for additional assurance of payment (a "Request") and serve such Request upon counsel for the Debtors, Okin Adams Bartlett Curry LLP, 1113 Vine Street, Suite 240, Houston, Texas 77002 (Attn: Matthew S. Okin, email: mokin@okinadams.com; David L. Curry, Jr., email: dcurry@okinadams.com; and Ryan A. O'Connor, email: roconnor@okinadams.com). Any such Request by a Utility Provider must specify the amount and nature of assurance of payment that would be satisfactory to the Utility Provider and must set forth: (i) the type of utility services that are provided; (ii) the location for which the relevant utility services are provided; (iii) a list of any deposits or other security currently held by such Utility Provider; and (iv) a description of any payment delinquency or irregularity by the Debtors for the post-petition period.

d. Without further order of the Court, the Debtors may enter into agreements granting to the Utility Providers that have submitted Requests any assurance of payment that the Debtors, in their sole discretion, determine is reasonable, subject only to and consistent with the terms of any cash collateral order entered and accompanying budget approved by the Court in these Chapter 11 Cases; *provided, however*, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to the U.S. Trustee and any official committee appointed in these Chapter 11 Cases upon request written request.

e. If a Utility Provider timely submits a Request for assurance of payment that the Debtors believe is unreasonable, and if after good faith negotiations by the parties, the parties are unable to resolve the issue, the Utility Provider may file an objection to these Adequate Assurance Procedures; *provided*, *however*, that any such objection must be filed not later than June 14, 2023.

    f.   Unless otherwise agreed by the Debtors pursuant to these Adequate Assurance Procedures, any Utility Provider that does not timely object to the Adequate Assurance Procedures will be deemed to have received assurance of payment that is satisfactory to the Utility Provider under section 366(c)(2) of the Bankruptcy Code without further action by the Debtors, and without prejudice to the right of such Utility Provider to seek relief in the future pursuant to section 366(c)(3).

## IV.    BASIS FOR RELIEF REQUESTED

19.    Bankruptcy Code section 366 protects debtors against the immediate termination or alteration of utility services after the petition date. Specifically, section 366 of the Bankruptcy Code provides that, "[e]xcept as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due." 11 U.S.C. § 366(a). Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility company within thirty days of the petition, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy code provides a non-exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guaranty of the debtors' ability to pay. *See In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.—NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'" (citation omitted)), *aff'd sub nom. Va. Elec. &*

4886-3555-6194, v. 1

*Power Co. v. Caldor, Inc.—NY*, 117 F.3d 646 (2d Cir. 1997); *see also In re Tekoil & Gas Corp.*, No. 08-80270G3-11, 2008 WL 2928555, at *2, n.1 (Bankr. S.D. Tex. July 21, 2008) ("[A] debtor may continue to pay a utility and a utility may continue to provide service, in the absence of an injunction preventing the utility from terminating service.") (citing *In re Viking Offshore (USA) Inc.*, No. 08-31219-H3-11, 2008 WL 782449, at *3, n3. (Bankr. S.D. Tex. Mar. 20, 2008)).

20. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.3d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operating of the debtor merely to give further security to suppliers who already are reasonably protected").

21. Termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] would be catastrophic."); *see also In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321-22 (Bankr. E.D. Pa. 1988) (noting that without utility

service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it"). Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit and the Debtors' ability to meet obligations as the come due in the ordinary course provide assurance that the Debtors will pay their future obligations to the Utility Providers.

22. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g., In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "[t]he plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id*. Here, notwithstanding a determination that the Adequate Assurance Deposit constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See Id.* at *5-6. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to submit a Request for modification of the proposed Adequate Assurance Deposit. *See Id*. at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See Id*. at *5.

23. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the proposed Adequate Assurance Deposit are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under sections 105(a) and 366 of the Bankruptcy Code and approve the Adequate Assurance Deposit and related Adequate Assurance Procedures.

## V.     REQUEST FOR OBJECTION DEADLINE

24. Pursuant to ¶ 4(f) of the Complex Case Procedures, the Debtors request that the Court: (i) establish June 14, 2023 as the deadline for any Utility Provider to file an objection to the Adequate Assurance Deposit offered pursuant to this Motion; and (ii) provide for a hearing not later than June 21, 2023 to consider any such timely filed objections.

## VI.    BASIS FOR EMERGENCY RELIEF

25. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i) and Bankruptcy Rule 6003, which authorizes a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. Here, the Debtors believe an immediate and orderly transition into chapter 11, including continuation of Utility Services, is critical to the viability of their operations and that any delay in granting the relief requested could cause irreparable harm. Furthermore, the failure to receive the requested relief would severely disrupt the Debtors' operations at this critical juncture and imperil the Chapter 11 Cases. Additionally, pursuant to the Complex Case Procedures, final orders granting relief of the kind requested in this Motion are appropriate because the order: (i)

does not prejudice the rights of any Utility Provider to propose alternative procedures, after notice and a hearing; and (ii) permits Utility Providers to file a motion and request a hearing not later than thirty (30) days after the Petition Date on any timely filed objection to the Adequate Assurance Procedures. *See* Complex Case Procedures, ¶ 4(f). Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## VII.     REQUEST FOR WAIVER OF STAY

26.     To the extent that the relief sought in this Motion constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## VIII.     RESERVATION OF RIGHTS

27.     Nothing contained herein shall be deemed: (i) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (ii) an impairment or waiver of the Debtors' or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property or its estate; (iii) a promise or requirement to pay any prepetition claim; (iv) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (v) an implication or admission that any particular claim is of a type specified or defined in this Motion, or any order granting the relief requested by this Motion; (vi) an implication, admission, or finding as to (a) the validity, enforceability, or perfection of any interest or encumbrance on the

property of any Debtor or its estate or (b) the applicability of any exception or exclusion from property of the estate under section 541 of the Bankruptcy Code or other applicable law; (vii) an impairment or waiver of any claims or causes of action which may exist against any entity; or (viii) a waiver of any Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## IX.    NOTICE

28.    Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## X.    PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form submitted herewith: (i) granting the relief requested in this Motion; and (ii) granting the Debtors such other and further relief as the Court may deem just and proper.

Respectfully submitted on the 23rd day of May, 2023.

                                         **OKIN ADAMS BARTLETT CURRY LLP**

                                         By:    /s/ *Matthew S. Okin*
                                                    Matthew S. Okin
                                                    Texas Bar No. 00784695
                                                  Email: mokin@okinadams.com
                                                  David L. Curry, Jr.
                                                  Texas Bar No. 24065107
                                                  Email: dcurry@okinadams.com
                                                  Ryan A. O'Connor
                                                  Texas Bar No. 24098190
                                                  Email: roconnor@okinadams.com
                                                  1113 Vine St., Suite 240
                                                  Houston, Texas 77002
                                                  Tel: 713.228.4100
                                                  Fax: 346.247.7158

                                           **PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF ACCURACY PURSUANT TO B.L.R 9013-1(i)

       In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the matters set forth in the foregoing Motion.

                                                  By:   /s/ *Matthew S. Okin*
                                                              Matthew S. Okin

4886-3555-6194, v. 1