**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 23-90558** |
| **PARADOX RESOURCES, LLC,** *et al.,* | § | |
| | § | **Chapter 11** |
| **Debtors.**[1] | § | |
| | § | **(Joint Administration Requested)** |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION, LIENS AND SUPERPRIORITY CLAIMS TO THE SECURED LENDER FOR THE USE THEREOF; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL; AND (IV) GRANTING RELATED RELIEF**

---

EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 3:30 P.M. (PREVAILING CENTRAL TIME) ON MAY 24, 2023.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 24, 2023 AT 3:30 P.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.

PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE JONES' HOME PAGE. THE MEETING CODE IS "JUDGEJONES". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Paradox Resources, LLC (7152); Paradox Midstream, LLC (2127); Paradox Upstream, LLC (0256); Capital Commercial Development, Inc. (3124); Neuhaus Barrett Investments, LLC (5529); Four Corners Energy, LLC (8159); and Four Corners Pipeline, LLC (8748). The Debtors' service address is: 500 Dallas Street, Suite 1600, Houston, Texas 77002.

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JONES' HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Paradox Resources, LLC, *et al*., the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby file this *Emergency Motion for Entry of an Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection, Liens and Superpriority Claims to the Secured Lender for the Use Thereof; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral; and (IV) Granting Related Relief* (the "Motion"), and in support hereof, respectfully state as follows:

## I.    PRELIMINARY STATEMENT

1.      The Debtors are a Houston-based independent midstream and upstream company primarily focused on helium processing and sales and carbon capture, utilization, and sequestration.  The Debtors' Lisbon Valley Gas Plant and helium processing business is fully-integrated and includes the sole gas processing plant servicing the Paradox Basin in southern Utah and Colorado, over 500 miles of gas gathering pipeline operations, and 119,000 net acres held-by-production in the Four Corners region of Utah and Colorado.

2.      Beginning in or around 2020, the Debtors began experiencing issues with cash flow and liquidity.  The global pandemic created a payables overhang that eventually proved too difficult for the company to overcome. The Debtors' issues worsened in 2023 due to a combination of factors including commodity price fluctuations, including a steep decline in the price of natural gas, and operational and regulatory issues which proved unsolvable due to a lack of sufficient working capital.  For example, following a peak price of $9.56 per Mbtu for the week ending

August 26, 2022, natural gas prices has significantly declined hitting a two-year low of $2.03 per

Mbtu for the week ending May 5, 2023.[2]



3.    Additionally, in July 2022 the Debtors experienced a critical boiler malfunction,

causing a severe disruption in operations.  Further, in or around March 2023, certain of the Debtors

producing properties were shut-in by the Office of Natural Resource Revenue and the Bureau of

Land Management as a result of the Debtors' inability to locate records relating to periods

preceding the Debtors' acquisition of the relevant assets.

4.    In an effort to address its liquidity issues and capital needs, in July 2021, the

Debtors engaged Evercore Group L.L.C. ("Evercore") to provide financial advisory services to the

Debtors in connection with the evaluation of strategic and financial alternative.  Evercore was able

to identify potential strategic purchasers providing indications of interest reflecting substantial

value in the Debtors' assets.  Additionally, in February 2023, Evercore identified a ready, willing,

and able strategic lender who proposed a new lending facility to pay down existing secured debt

---

[2]    Henry   Hub   Natural   Gas   Spot   Price,   United   States   Energy   Information   Administration,
https://www.eia.gov/dnav/ng/hist/rngwhhdW.htm (last accessed 5/23/23).

and other obligations, fund planned capital expenditures, and provide working capital. Unfortunately, the Debtors' pre-petition secured lender, Washington Federal Bank, N.A. ("WaFd" or "Prepetition Lender"), refused to consent to the new lending.

5.       Following the failed new financing, the Debtors have continued to negotiate with the Prepetition Lender in an effort to access the liquidity necessary to stabilize the Debtors' operations.  To date, those efforts have not been fruitful.  Additionally, the Debtors have engaged with potential third-party lenders to obtain debtor-in-possession financing.  As set forth herein, the Debtors required the continued use of cash collateral in the immediate future to preserve its business as a going concern and to avoid an emergency shut-down of the Lisbon Plant.[3]

## II.   JURISDICTION AND VENUE

6.       The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

7.       The statutory predicates for the relief requested in this Motion are sections 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

---

[3] An emergency shut-down of the Lisbon Plant would be detrimental to operators in the Paradox Basin as the Lisbon Plant is sole functioning gas processing plant in the region servicing 300+ wells (equity and third party), approximately 600 miles of gathering, interstate, and DOT regulated pipelines.  Further, an emergency shut down poses significant HSE risks for people and employees in the area.  Stated simply, there is no safe, responsible way to immediately shut down or decommission the Lisbon Plant.  To shut down the plant responsibly, the Debtors estimate that the regulated process would require in excess of $5 million.

### III.   BACKGROUND

A.   **In General**

8.      On May 22, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

9.      Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

10.      The Debtors are a fully-integrated helium company operating primarily in the Paradox Basin in southern Utah and Colorado, near what is commonly referred to as the Four Corners region.  The Debtors operations are divided amongst three integrated business segments: Paradox Midstream, Paradox Upstream, and Paradox Downstream.

11.      Midstream owns and operates the sole natural gas processing plant in the Paradox Basin (the "Lisbon Plant") and more than 521 miles of rich gas gathering pipelines.  The Lisbon Plant, located approximately 35 miles southeast of Moab, Utah in the Lisbon Valley, is a 60 MMcfd treating plant with 1.1 MMcfd of helium processing capacity made up of purification and Liquefaction capabilities, a 45 MMcfd cryogenic plant, and a 10 MBpd fractionation train.  The Lisbon Plant was specifically engineered to process the natural gas from the Paradox Basin that typically contains high amounts of carbon dioxide, hydrogen sulfide, nitrogen, and helium. Midstream's gathering system includes: (i) approximately 262 miles of wholly owned and operated pipelines; and (ii) approximately 259 miles of pipelines operated under agreements with the Navajo Nation.

12.     Upstream owns and operates six conventional fields with 119,000 net acres held-by-production in the McCracken, Leadville, Ismay, La Sal, Honaker Trail and Cutler formations in the Paradox Basin.  Finally, the Debtors' downstream segment markets and sells helium, fractionated propanes, butanes, and natural gases directly to end-users and local markets at a premium over wholesale.

**B.     Secured Debt**

13.     The Debtors have incurred a substantial amount of debt to fund their activities and sustain operations.  A detailed description of the Debtors' various credit and security agreements is set forth below.

14.     Prior to the Petition Date, Debtors Paradox Upstream, LLC, Capital Commercial Development, Inc., Neuhaus Barrett Investments, LLC and Paradox Midstream, LLC (collectively, the "Borrowers") executed that certain Second Amended and Restated Loan Agreement, dated July 19, 2019, as amended by the First Amendment to Second Amended and Restated Loan Agreement, dated December 4, 2019, the Second Amendment to Second Amended and Restated Loan Agreement, dated June 19, 2020, the Third Amendment to Second Amended and Restated Loan Agreement, dated November 19, 2020, the Fourth Amendment to Second Amended and Restated Loan Agreement, dated May 19, 2021, the Fifth Amendment to Second Amended and Restated Loan Agreement, dated October 22, 2021, the Sixth Amendment to Second Amended and Restated Loan Agreement, dated February 22, 2022, the Seventh Amendment dated November 8, 2022, and the Eighth Amendment to Second Amended and Restated Loan Agreement, dated February 28, 2023 (collectively the "Prepetition Loan Agreement") with the Prepetition Lender incurring certain obligations (the "Prepetition Secured Debt").

4890-0100-0550, v. 5

15.     The Prepetition Secured Debt is guaranteed by the Debtors' chief executive officer, Todd A. Brooks, (the "PG") and Debtors Four Corners Energy, LLC and Four Corners Pipeline, LLC (the "Subsidiary Guarantees").   The PG is secured by an Assignment of Deposits (the "Assignment"), for the benefit of WaFd on or about on November 19, 2020, thereby assigning, pledging, and granting to WaFd a security interest in a certain Money Market Account maintained by Todd A. Brooks with WaFd and holding a cash balance in the minimum amount of $1,000,000.00.

16.     On May 17, 2023, the Prepetition Lender sent a Notice of Default and Acceleration to the Debtors.  As of the Petition Date, the outstanding balance owed to WaFd on account of the Prepetition Loan Documents was approximately $36,460,568.87 (the "First Lien Debt").

## C.     Unsecured Debt

17.     In addition to the prepetition First Lien Debt, the Debtors have substantial unsecured debt owed to numerous trade creditors, among others.  In the ordinary course of business, the Debtors have engaged in numerous strategic relationships with various service providers in relation to their operations which are critical to maintaining the value of the Debtors' estates. Due to the various liquidity issues described herein, the Debtors do not have sufficient cash flow to pay the trade payables.  The Debtors estimate that they have incurred approximately $15.4 million in unsecured debt as of the Petition Date.

## IV.   RELIEF REQUESTED

18.     By this Motion, the Debtors seek entry of an order (the "Interim Order"), substantially in the form submitted herewith: (i) approving the Debtors' use of Cash Collateral as working capital in the operation of the business for the purposes specified in, and, at least, for the period defined in the budget (the "Budget") which is attached hereto as **Exhibit A** and incorporated

4890-0100-0550, v. 5

by herein by reference; (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral; and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

## V.    STATEMENT REGARDING SIGNIFICANT PROVISIONS

19.    Pursuant to Bankruptcy Rule 4001(b), the Debtors respectfully state that as adequate protection for the diminution in value of Cash Collateral, the Debtors will: (i) maintain the value of their business as a going-concern; (ii) comply at all times with the Budget, subject to reasonable variances; (iii) make interest only payments on a monthly basis to WaFd on account of the First Lien Debt; and (iv) provide replacement liens to WaFd to the extent of any diminution in value of the collateral.

## VI.   BASIS FOR RELIEF REQUESTED

20.    Under section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or of the Court, after notice and a hearing, authorizes the use of the cash collateral.  11 U.S.C. § 363(c)(2).  Pursuant to Bankruptcy Code section 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.  11 U.S.C. § 363(c)(3).

21.    Bankruptcy Rule 4001(b) and (d) governs the procedure for consideration of motions to use cash collateral, and both subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.  *See* FED. R. BANKR. P. 4001(b) and (d).  At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and

8

the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.  11 U.S.C. § 363(p)(2) ("In a hearing under [section 363], the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest").

**A.     Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm**

22.     The Debtors' Chapter 11 Cases will not survive without authority to use Cash Collateral on an interim basis until such time as post-petition financing with a third-party lender can be finalized.  WaFd, the Debtors' Prepepetition Lender, has thus far been unwilling, or perhaps unable under current market conditions, to advance additional loans sufficient to sustain the Debtors' ongoing operations and fund the Chapter 11 Cases.  Although the Debtors, through their retained professionals, have attempted to keep the lines of communication open about the possibility of a DIP loan, no progress has been made. The continued use of Cash Collateral is therefore necessary to ensure that there are no lapses in operation, no matter how transitory, that could have a devastating impact on the value of the Debtors' business and efforts to effectuate a reorganization.  Further, the Debtors have incurred payroll obligations and operating expenses and believe that the failure to pay these obligations and expenses would result in a material loss of the Debtors' workforce, complications with vendors and customers, and have a detrimental impact on restructuring efforts.   Unless the Debtors are permitted to use Cash Collateral to conduct operations, pay employees, and maintain the value of their assets, the Debtors' operational capacity will be significantly reduced, and the Debtors will face the loss of the workforce and customer relationships.

23.     The use of Cash Collateral is necessary and appropriate to stabilize the Debtors' operations and revenue by paying ordinary, post-petition operating expenses, and any Court-

9

approved prepetition expenses that may be at issue.  Without authority to use Cash Collateral, the Debtors will not be able to function as a going concern for the interim period while the Debtors negotiate for post-petition financing from third-party sources, or otherwise progress to entry of the Final Order authorizing use of Cash Collateral.  In turn, the Debtors will not be able to proceed to an efficient conclusion of the Chapter 11 Cases through an orderly restructuring of their financial affairs.  Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtors' business and will be in the best interests of the Debtors, their estates, creditors and other parties in interest.

**B.      The Proposed Adequate Protection is Sufficient**

24.      Through this Motion, the Debtors intend to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date, to the Prepetition Lender, for the use of the Cash Collateral by:

a.      maintaining the going concern value of the collateral by using the Cash Collateral to continue to operate the business and administer the Chapter 11 Cases;

b.      servicing the First Lien Debt by making interest only payments to WaFd; and

c.      providing replacement liens to WaFd to the extent of any diminution in value of the collateral.

25.      The continuation of the Debtors' operations presents the best opportunity for the Prepetition Lender to receive the greatest recovery on account of its claims against the estates. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtors to continue operations, at least for a brief period, and thereby preserve the lenders' collateral and protect the interests of all stakeholders.  Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral.  *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr.

10

D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably post-petition, then the secured creditor is adequately protected); *see also In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

## VII.  REQUEST FOR INTERIM RELIEF

26.     An immediate need exists for the Debtors to obtain approval of the use of Cash Collateral.  Without immediate use for an interim period as set forth in the Budget, the Debtors will be unable to continue operations and risk the loss of significant value.  The Debtors' business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation.  Accordingly, it is imperative that relief be granted on an emergency basis in order for the Debtors to timely make their currently scheduled payroll.

## VIII.  REQUEST FOR FINAL HEARING

27.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors also request that the Court set a date for a Final Hearing as soon as practicable to consider entry of a Final Order, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

4890-0100-0550, v. 5

## IX.    EMERGENCY CONSIDERATION

28.    The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i) and Bankruptcy Rule 6003, which authorizes a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003.  Here, the Debtors believe an immediate and orderly transition into chapter 11, including authorization to use Cash Collateral, is critical to the viability of their operations and ability to meet payroll obligations, and that any delay in granting the relief requested could cause irreparable harm.  Furthermore, the failure to receive the requested relief would severely disrupt the Debtors' operations at this critical juncture and imperil the Chapter 11 Cases. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## X.    REQUEST FOR WAIVER OF STAY

29.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their business and preserve the value of the estates.

## XI.    RESERVATION OF RIGHTS

30.    Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of an prepetition claim against the Debtors; (ii) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (iii) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order

12

granting the relief requested by this Motion; (iv) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (v) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## XII.  NOTICE

31.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## XIII. PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an Interim Order, substantially in form submitted herewith: (i) authorizing use of Cash Collateral pursuant to section 363(c) of the Bankruptcy Code; (ii) granting adequate protection for the use thereof; (iii) scheduling a Final Hearing pursuant to Bankruptcy Rule 4001 as to use of Cash Collateral; and (iv) granting the Debtors such other and further relief as the Court may deem just and proper.

4890-0100-0550, v. 5

Respectfully submitted on the 23rd day of May, 2023.

**OKIN ADAMS BARTLETT CURRY LLP**

By:      /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
David L. Curry, Jr.
Texas Bar No. 24065107
Email: dcurry@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
Email: roconnor@okinadams.com
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the matters set forth in the foregoing Motion.

By:      /s/ *Matthew S. Okin*
Matthew S. Okin

14

4890-0100-0550, v. 5