United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 09, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-90558** |
| **PARADOX RESOURCES, LLC,** *et al.,* | § | |
| | § | **Chapter 11** |
| Debtors. | § | |
| | § | **(Jointly Administered)** |

**ORDER (I) APPROVING SECOND AMENDMENT TO ASSET PURCHASE
AGREEMENT; (II) AUTHORIZING USE OF SECOND EXTENSION PAYMENT
AND CASH COLLATERAL; AND (III) GRANTING RELATED RELIEF**
**(Relates to ECF # 474)**

The Court considered the *Emergency Motion for Entry of an Order (I) Approving Second Amendment to Asset Purchase Agreement; (II) Authorizing Use of Second Extension Payment and Cash Collateral; and (III) Granting Related Relief* (the "Motion"),[1] filed by Paradox Resources, LLC, *et al.*, the above-captioned debtors and debtors in possession (the "Debtors"). The Court having reviewed the Motion and any objections thereto; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; that this is a core proceeding pursuant to 28 U.S.C. § 157(b); that notice of the Motion was sufficient; and it appearing that the emergency relief requested is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and that good cause has been shown therefore, finds that the Motion should be GRANTED.  It is therefore hereby **ORDERED** that:

1.     The Second Amendment to the Purchase Agreement substantially in the form attached hereto as **Exhibit 1** is approved in all respects.  The Debtors are authorized to (i) execute the Second Amendment and any documents or instruments necessary or desirable to consummate

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the First Amendment, the Sale Order, or the Purchase Agreement, as applicable.

the transactions contemplated the Sale Order and Purchase Agreement and (ii) take all other actions necessary or desirable to carry out the intent and purpose of this Order.

2.      The Sale Order is hereby amended, modified and supplemented solely to the extent necessary to permit the Debtors and Buyer to consummate the Sale Transaction as contemplated by the Purchase Agreement as modified by the First Amendment and Second Amendment.  The term Purchase Agreement in the Sale Order shall mean the Purchase Agreement, as amended by the First Amendment and Second Amendment.  Except as expressly provided in this Order, the Sale Order shall remain unaltered and enforceable in accordance with its terms.

3.      Promptly following entry of this Order, Buyer is authorized and directed to pay to the Debtors by wire transfer of immediately available funds the Second Extension Payment of $500,000.

4.      The Debtors are authorized to use the Second Extension Payment and Cash Collateral to fund the actual and necessary Second Extension Expenses for the operation and maintenance of the Purchased Assets in accordance with the Second Extension Budget attached to the Second Amendment.  The Debtors shall at all times comply with the Second Extension Budget, subject to an allowed cumulative variance of less than or equal to fifteen percent (15%) of revenue and fifteen percent (15%) in the aggregate of the expense line items set forth on the Second Extension Budget (the "Permitted Variance"), which Second Extension Budget, including the payment or accrual of any costs, fees, or expenses incurred by the Debtors or their estates prior to the entry of this Order, shall be deemed an Approved Budget as defined in the Interim DIP Order [ECF # 136] and Final DIP Order [ECF # 197] (collectively, the "WaFd DIP Orders").

5.      This Order shall constitute an "Applicable Order" as defined that certain *Stipulation and Agreed Order* [ECF # 467] (the "Carve Out Stipulation") by and among the Debtors, the

Committee and WaFd.  Except as expressly provided in this Order, the Carve Out Stipulation shall remain unaltered and enforceable in accordance with its terms.

6.     The Second Extension Payment shall be an allowed administrative expense in each of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code; *provided*, *however*, that (i) such administrative expense claim shall only be allowed or assertable by Buyer in the event the Sale Transaction does not close through no fault of the Buyer; and (ii) such administrative expense claim shall be subject to the Carve-Out as defined in the Final DIP Order.

7.     Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits; provided, however, that any objections to professional fees or the use of cash at closing to fund payment of professional fees are reserved as provided in the Court's Supplemental DIP Orders.

8.     In the event of any inconsistency between the Second Amendment, the First Amendment, or the Purchase Agreement, then (i) the Second Amendment shall control first, (y) the First Amendment shall control second, and (z) the Purchase Agreement shall control third.

9.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or any other applicable Bankruptcy Rules or rules of procedure, this Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Order, all of which are hereby waived for cause shown.

10.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed:  February 09, 2024

Christopher Lopez
United States Bankruptcy Judge

## **Exhibit 1**

**Second Amendment to Purchase Agreement**

*Execution Version*

**SECOND AMENDMENT
TO
ASSET PURCHASE AGREEMENT**

THIS SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT (this "***Second Amendment***") dated as of February 7, 2024, is made by and among **PARADOX RESOURCES, LLC**, a Texas limited liability company, and its subsidiaries and affiliates: (i) **PARADOX UPSTREAM, LLC**; (ii) **PARADOX MIDSTREAM, LLC**; (iii) **FOUR CORNERS ENERGY, LLC**; and (iv) **FOUR CORNERS PIPELINE, LLC** (collectively, "***Seller***"), and **GNG PARTNERS, LLC** ("***Buyer***"). Seller and Buyer may be referred to herein individually as a "***Party***," and collectively as the "***Parties***."

WHEREAS, the Parties previously executed that certain Asset Purchase Agreement dated November 14, 2023 (the "***Purchase Agreement***");

WHEREAS, the Parties previously executed that certain First Amendment to Asset Purchase Agreement dated January 4, 2024 (the "***First Amendment***"); and

WHEREAS, the Parties desire to further amend the Purchase Agreement as set forth herein;

NOW, THEREFORE, in consideration of the mutual premises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      **Definitions**.  All capitalized terms used and not defined in this Second Amendment shall have the meanings ascribed thereto in the Purchase Agreement or First Amendment, as applicable, unless expressly provided otherwise in this Second Amendment, and all rules as to interpretation and usage set forth therein shall apply hereto.  All references in this Second Amendment to "Articles," "Sections," and "Exhibits" shall be references to Articles, Sections, and Exhibits of the Purchase Agreement unless expressly provided otherwise.

2.      **Section 1.1 (Definitions)**.

Section 1.1 is amended by deleting the following definition to Section 1.1:

    "Alternative Transaction Approved Party."

Section 1.1 is further amended by adding the following new definitions to Section 1.1 in appropriate alphabetical order:

    "Second Extension Budget" has the meaning set forth in Section 3.4.

    "Second Extension Payment" has the meaning set forth in Section 3.4.

    "Second Supplemental Sale Order" means an Order of the Bankruptcy Court, in form and substance acceptable to Buyer, approving the Second Amendment, including allowing the Second Extension Payment as an actual and necessary cost and expense of preserving each of the Seller's estates under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

109335248

3.      **Section 2.3 (Assumed Liabilities)**.   <u>Section 2.3</u> is amended by replacing the current <u>Section 2.3(i)</u> with the following new <u>Section 2.3(i)</u> and adding the following provision as a new <u>Section 2.3(j)</u> in appropriate chronological order:

"(i)      Post-petition Royalties payable by Seller to BLM or ONRR, as applicable, on account of (a) January production which is due March 1, 2024 and (b) February production which is due April 1, 2024, each in an amount estimated to be $60,000 per month, or $120,000 in the aggregate, but the actual amount may be more or less depending upon actual volumes of Seller's production for January and February 2024, respectively, and the actual price obtained by Seller for the sale of such production.  Such Royalty amounts for January and February production shall be paid by Buyer to BLM and ONRR, as applicable, at the latest of when such respective amounts come due in the ordinary course after Closing or within ten (10) Business Days thereafter.  For the avoidance of doubt, and notwithstanding anything to the contrary in the First Amendment or this Second Amendment, Buyer is not assuming, and Seller shall timely pay, all other post-petition Royalties due to BLM and ONRR, as applicable.

(j)      Notwithstanding <u>Section 8.1(b)</u> or anything else to the contrary in the Purchase Agreement, Asset Taxes for the period from and after January 5, 2024."

4.      **Section 3.2 (Good Faith Deposit)**.   <u>Section 3.2</u> is amended by replacing the current <u>Section 3.2</u> provided in the First Amendment with the following new <u>Section 3.2</u>:

"Buyer has submitted to Seller by wire transfer of immediately available funds contemporaneously with the execution of this Agreement an amount equal to twenty percent (20%) of the cash portion of the Base Purchase Price (such amount, including any interest earned thereon, the "<u>Good Faith Deposit</u>"). Upon execution of this Agreement, entry of the Sale Order and entry of the Supplemental DIP Order, Seller shall be entitled to use the Good Faith Deposit to fund actual and necessary operating expenses in accordance with this Agreement and an approved budget reasonably acceptable to Buyer to be attached to the Supplemental DIP Order. Debtors shall timely pay (a) all post-petition obligations owed or owing to Specialty Trailer Leasing Inc. in respect of that certain Master Equipment Lease with Specialty Trailer Leasing, Inc., and (b) all post-petition Royalties. Notwithstanding any other provision of this Agreement, the Sale Order, Supplemental DIP Order, First Amendment or Supplemental Sale Order, and as consideration for Seller's agreement to enter into the Second Amendment, Buyer agrees to subordinate its Buyer DIP Liens (as defined in the Supplemental DIP Order), and such Buyer DIP Liens shall not be senior in priority to or otherwise prime, an amount equal to but not more than $100,000.00 of the Carve-Out provided in the Final DIP Order.  Buyer shall be entitled to return of the Good Faith Deposit by wire transfer of immediately available funds to an account specified in writing by Buyer upon termination of this Agreement by Seller or Buyer pursuant to <u>Section 11.1(a)</u> or termination by Buyer pursuant to any of <u>Sections 11.1(a)(1)</u>, and <u>11.1(a)(iii)-11.1(a)(v)</u> or <u>Section 11.1(b)</u>."

2

5. **Section 3.4 (Second Extension Payment)**. <u>Article 3</u> is amended by adding the following new provision as a new <u>Section 3.4</u> in appropriate chronological order:

"3.4.   <u>Second Extension Payment</u>. Promptly following execution of the Second Amendment and entry of the Second Supplemental Sale Order, Buyer shall pay to Seller by wire transfer of immediately available funds an amount equal to five hundred thousand dollars ($500,000) (the "<u>Second Extension Payment</u>"). Seller agrees and acknowledges to use the Second Extension Payment solely to fund actual and necessary expenses for the operation and maintenance of the Purchased Assets incurred by Seller until the Closing Date (such expenses being the "<u>Second Extension Expenses</u>") as set forth in <u>Schedule 3.4</u> attached hereto (the "<u>Second Extension Budget</u>"). The Second Extension Payment shall not constitute (i) an addition to or any portion of the Good Faith Deposit or (ii) payment of the cash component of the Purchase Price*, provided, however,* that if the Closing occurs (x) on or before February 16, 2024, then $160,000 shall be credited against the cash portion of the Base Purchase Price or (y) after February 16, 2024 but on or before February 23, 2024, then $75,000 shall be credited against the cash portion of the Base Purchase Price. Buyer shall be entitled to only one of (x) or (y) above and such amount shall be shown on the Preliminary Settlement Statement of Seller to be received by Buyer under <u>Section 4.4(i)</u> and <u>Section 8.12</u>.  Seller agrees that the Second Extension Payment shall be an allowed administrative expense in each of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code; *provided*, *however*, that (i) such administrative expense claim shall only be allowed or assertable by Buyer in the event the sale transaction does not close through no fault of the Buyer; and (ii) such administrative expense claim shall be subject to the Carve-Out as defined in the Final DIP Order.  For the avoidance of doubt Seller shall immediately file one or more motions in form and substance acceptable to Buyer seeking the Bankruptcy Court's expedited consideration and entry of the Second Supplemental Sale Order as soon as practicable."

6. **Section 4.1 (Closing Date)**.  <u>Section 4.1</u> is amended by deleting "February 6, 2024" and replacing such date with "February 29, 2024, or such earlier date (but not earlier than February 16, 2024) if the conditions to Closing in <u>Article 9</u> and <u>Article 10</u> have been satisfied or, if permissible, waived (excepting the conditions which by their nature are to be satisfied at the Closing)" which shall be the amended Target Closing Date.

7. **Section 7.9(b) (No Solicitation of Alternative Transactions)**. Section 7.9(b) is amended by deleting the current language in <u>Section 7.9(b)</u> as set forth in the First Amendment and adding the following as a new <u>Section 7.9(b)</u>:

"(b)   Notwithstanding <u>Section 7.9(a)</u> to the contrary, following execution of the Second Amendment and entry of the Second Supplemental Sale Order, Seller or its Representatives may pursue an Alternative Transaction with any third-party other than the investors (or their Affiliates) identified in writing by Buyer to Seller or its Representatives on or prior to the execution of the Second Amendment (an "<u>Approved Alternative Transaction</u>"); *provided*, that such Approved Alternative Transaction must expressly be conditioned upon and may only be consummated by

3

Seller in the event this Agreement is terminated by Seller pursuant to <u>Section 11.1(a)(iii)</u> or <u>Section 11.1(c)</u> as a result of Buyer failing to proceed with the consummation of the transactions contemplated by this Agreement after the conditions in <u>Article 9</u> have been satisfied or such conditions have been waived in writing by Buyer."

8.      **Section 11.1 (Termination Events)**. <u>Section 11.1(a)(iii)</u> is amended by deleting "February 6, 2024" and replacing such date with "February 29, 2024" which shall be the amended Outside Date. For the avoidance of doubt, the amended Target Closing Date and amended Outside Date shall both be February 29, 2024.

9.      **Section 13.7 (Assignment)**. <u>Section 13.7</u> is amended by adding the following sentence to the end of <u>Section 13.7</u>:

"Notwithstanding the preceding provisions of this <u>Section 13.7</u> to the contrary, Buyer is permitted to assign all or part of its rights or obligations hereunder to one or more Persons that are 100% owned, directly or indirectly, by Buyer and its co-investment partners, and each such assignee shall be deemed to be a Buyer for all purposes under the Transaction Documents to the extent of the rights and obligations so assigned to such assignee."

10.     **Schedules**. The Schedules are amended by adding the following as Schedules to the Purchase Agreement, as attached hereto:

i.      Schedule 3.4 (Second Extension Budget).

11.     **Instrument of Amendment**. The Parties acknowledge and agree that this Second Amendment constitutes a written amendment signed by each Party to the Purchase Agreement and fulfills the requirements of an amendment contemplated by <u>Section 13.6</u> of the Purchase Agreement. Upon the effectiveness of this Second Amendment, each reference in the Purchase Agreement to "this Agreement," "hereunder," "hereof," "herein" or words of similar import shall mean and be a reference to the Purchase Agreement as modified by this Second Amendment.

12.     **References**. Each reference in the Purchase Agreement shall, unless the context otherwise requires, mean the Purchase Agreement as amended by this Second Amendment.

13.     **Continuation of the Purchase Agreement**. Except as otherwise expressly set forth in this Second Amendment, all other terms and conditions of the Purchase Agreement remain in full force and effect without modification.

14.     **Construction, Etc**. This Second Amendment shall be governed by all provisions of the Purchase Agreement, unless the context otherwise requires, including all provisions concerning construction, enforcement, notices, governing law, and arbitration. Any conflict between the provisions of this Second Amendment and the Purchase Agreement shall be controlled by the provisions of this Second Amendment.

15.     **Successors**. This Second Amendment shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.

4

16.   **<u>Counterparts</u>**.   This Second Amendment and any amendment hereto may be executed in one or more counterparts and by different Parties in separate counterparts, each of which shall be deemed to be an original of this Second Amendment or such amendment and all of which, when taken together, shall constitute one and the same agreement.   Delivery of an executed counterpart of a signature page to this Second Amendment or any amendment hereto by facsimile or other electronic means (including portable document format sent via email) shall be as effective as delivery of a manually executed counterpart of this Second Amendment or such amendment, as applicable.

[*Signature pages follow.*]

**IN WITNESS WHEREOF**, each of the undersigned has caused this Second Amendment to be executed by its duly authorized representatives on the day and year first set forth above.

**SELLER AND SELLER AGENT:**

PARADOX RESOURCES, LLC
PARADOX UPSTREAM, LLC
PARADOX MIDSTREAM, LLC
FOUR CORNERS ENERGY, LLC
FOUR CORNERS PIPELINE, LLC

By: _____
Name: Douglas J. Brickley
Title:   Chief Restructuring Officer

**BUYER:**

GNG PARTNERS, LLC

By: _____
Name: Peter Hornick
Title:   Authorized Signatory

By: _____
Name: Jason Selch
Title:   Authorized Signatory

SIGNATURE PAGE TO SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT

## **<u>SCHEDULE 3.4</u>**

Second Extension Budget

**PARADOX RESOURCES, LLC**
*4-WEEK CASH COLLATERAL BUDGET*

| | Forecast 1 Week Ending 2/11/2024 | Forecast 2 Week Ending 2/18/2024 | Forecast 3 Week Ending 2/25/2024 | Forecast 4 Week Ending 3/3/2024 | Total |
|---|---|---|---|---|---|
| **Cash Flow** | | | | | |
| **Receipts** | | | | | |
| Oil Sales | $ - | $ - | $ 33,766 | $ 25,677 | $ 59,444 |
| Gas Sales | 330,410 | - | - | 129,897 | 460,307 |
| Gas Sales 2 | - | - | 36,990 | 12,855 | 49,845 |
| Butane Sales | - | | | | - |
| Propane Sales | 17,401 | 17,357 | 17,313 | 31,430 | 83,503 |
| Natural Gasoline Sales | - | - | 37,259 | 84,083 | 121,341 |
| Helium Sales | - | 95,378 | - | 197,250 | 292,628 |
| Copper Mine Sales | 170,321 | - | - | 112,753 | 283,074 |
| Other Receipts | - | 24,804 | - | 313,765 | 338,569 |
| **Total Receipts** | $ 518,132 | $ 137,540 | $ 125,328 | $ 907,711 | $ 1,688,711 |
| **Cash Disbursements** | | | | | |
| **Operating Disbursements** | | | | | |
| Producer COGS | $ 100,233 | $ - | $ 52,850 | $ 89,860 | $ 242,942 |
| Royalty Expenses (Federal Government) | - | - | 60,000 | - | 60,000 |
| Royalty Expenses (Non-Federal Government) | - | - | 50,439 | 124,800 | 175,239 |
| Payroll | - | 120,000 | - | 120,000 | 240,000 |
| Benefits | - | 11,500 | - | 39,750 | 51,250 |
| Insurance | 30 | - | - | 88,995 | 89,025 |
| Rent & Office Expenses | - | 54,185 | - | - | 54,185 |
| Utilities | 179,258 | 51,603 | - | 470,280 | 701,141 |
| Compressor Rental | 58,239 | - | - | 66,455 | 124,694 |
| Boiler Rental | 90,589 | - | - | 45,294 | 135,883 |
| Water Hauling | 7,000 | 7,000 | 7,000 | 14,000 | 35,000 |
| Chemicals | 135 | 20,000 | 890 | 15,000 | 36,025 |
| Specialty Trailer Leasing | - | - | - | 12,050 | 12,050 |
| Ordinary Course Professionals | 13,482 | 685 | - | 25,000 | 39,167 |
| Field Expenses - Fuel & Travel | 7,496 | 7,590 | 5,000 | 10,000 | 30,086 |
| Field Expenses - Parts & Supplies | 2,822 | 6,000 | 6,000 | 12,000 | 26,822 |
| Internet & Software | 17,813 | 39,077 | - | 5,500 | 62,391 |
| Accounting & Tax Services | 24,500 | 3,518 | 6,966 | 3,518 | 38,502 |
| Regulatory Fees | - | - | - | 53,122 | 53,122 |
| Taxes | 706 | - | - | - | 706 |
| Miscellaneous/Contingent Field Expense | 18,596 | 11,635 | 7,690 | 49,869 | 87,789 |
| **Total Operating Disbursements** | $ 520,900 | $ 332,793 | $ 196,834 | $ 1,245,493 | $ 2,296,020 |
| **OPERATING CASH FLOW** | $ (2,768) | $ (195,253) | $ (71,506) | $ (337,782) | $ (607,309) |

**PARADOX RESOURCES, LLC**
*4-WEEK CASH COLLATERAL BUDGET*

|  | Forecast 1 Week Ending 2/11/2024 | Forecast 2 Week Ending 2/18/2024 | Forecast 3 Week Ending 2/25/2024 | Forecast 4 Week Ending 3/3/2024 | Total |
|---|---|---|---|---|---|
| **Other Disbursements** | | | | | |
| Professional Fees | $ - | $ 28,370 | $ - | $ 20,000 | $ 48,370 |
| Professional Fees - UCC Legal: Gray Reed | - | - | - | - | - |
| Professional Fees - UCC Financial Advisor: Ankura | - | - | - | - | - |
| DIP Facility Interest & Fees | - | - | - | - | - |
| Critical Vendors | - | - | - | - | - |
| Capex - Maintenance | - | - | - | - | - |
| Capex - Liquefier | - | - | - | - | - |
| Capex - CO2 Pipeline | - | - | - | - | - |
| Adequate Protection | - | - | - | - | - |
| **Total Other Disbursements** | $ - | $ 28,370 | $ - | $ 20,000 | $ 48,370 |
| **TOTAL DISBURSEMENTS** | $ 520,900 | $ 361,163 | $ 196,834 | $ 1,265,493 | $ 2,344,391 |
| **NET CASH FLOW** | $ (2,768) | $ (223,623) | $ (71,506) | $ (357,782) | $ (655,679) |

| **Cash Reconciliation** | | | | | |
|---|---|---|---|---|---|
| Beginning Cash Balance | $ 186,003 | $ 183,235 | $ 459,613 | $ 388,106 | $ 186,003 |
| DIP Advance/(Paydown) | - | - | - | - | - |
| GNG Partners Deposit | - | 500,000 | - | - | 500,000 |
| Net Cash Flow | (2,768) | (223,623) | (71,506) | (357,782) | (655,679) |
| **Ending Cash Balance** | $ 183,235 | $ 459,613 | $ 388,106 | $ 30,324 | $ 30,324 |

| **Estimated Accrual of Professional Fees** | | | | | |
|---|---|---|---|---|---|
| Okin & Adams, LLP | $ 16,667 | $ 8,333 | $ 8,333 | $ 8,333 | $ 41,667 |
| Stout Risius Ross, LLC | 16,667 | 8,333 | 8,333 | 8,333 | 41,667 |
| Donlin Recano | 1,667 | 1,667 | 1,667 | 1,667 | 6,667 |
| Evercore Group, LLC | - | - | - | - | - |
| Pontem Energy - Executive Management Services | - | - | - | - | - |
| CAMS Midstream Services, LLC | - | - | - | - | - |
| Bank Legal | - | - | - | - | - |
| Professional Fees - UCC Legal: Gray Reed | 5,833 | 1,458 | 1,458 | 1,458 | 10,208 |
| Professional Fees - UCC Financial Advisor: Ankura | 5,833 | 1,458 | 1,458 | 1,458 | 10,208 |
| **Estimated Accrued Total** | $ 46,667 | $ 21,250 | $ 21,250 | $ 21,250 | $ 110,417 |

| **Professional Fees Reserve** | | | | | |
|---|---|---|---|---|---|
| Beginning Balance | $ 2,974,279 | $ 3,020,946 | $ 3,013,826 | $ 3,035,076 | |
| Accrual/(Disbursements) | 46,667 | (7,120) | 21,250 | 1,250 | |
| US Trustee Fees Payment | - | - | - | - | |
| **Ending Balance** | $ 3,020,946 | $ 3,013,826 | $ 3,035,076 | $ 3,036,326 | |

**PARADOX RESOURCES, LLC**
*4-WEEK CASH COLLATERAL BUDGET*

<u>*Notes:*</u>

1) *This Operating Budget presents an extension of the original sale closing date extension of February 6, 2024 to February 29, 2024 with an additional $500K operational cash infusion by GNG.*

2) *Beginning the 1st week of Ch. 11 filing, check disbursements will be recognized as cash outflow in the week in which they are distributed.*

3) *Professional fees payment timing is subject to interim compensation procedure.*

4) *Estimated Accrual of Professional Fees does not impact the cash flow and it is presented for budget reporting purposes. Order approving use of cash collateral to provide carve out for full amount of accrued professional fees shown. Accrued professional fees excludes fees related to U.S. Trustee.*

5) *Evercore's success fee is not presented in the Budget. The success fee terms consist of a fee payable upon consummation of any sale transaction, equal to 1.5% of sale price with a minimum success fee of $750K. Retainer fee of $150K is fully creditable against the success fee and payable upon the consummation of any sale transaction.*

6) *Payroll excludes a salary for Todd Brooks and J. Barrett.*

7) *The Professional Fees Reserve acts as a holding account of the professional fees that grows as the fees are accrued and is reduced as the fees are paid during the budget shown. The beginning balance is the accumulation of the accrued fees earned in the weeks after the bankruptcy filing.*

8) *Royalty and Producer expenses are escrowed and paid out in the ordinary course of business.*

9) *Royalty Expenses (Federal Government) is estimated to be $60K per month which is the average of the federal government royalty payments made by the Debtor for July through November 2023, but the actual amount may be more or less depending upon actual volumes of production for January and February, and the actual price obtained for the sale of such production. It is presumed that GNG will assume the January and February federal government royalty payments.*

10) *It is assumed that the deposits held by One Allen Center, Rocky Mountain Power, Ware, and Summit Operating will be applied against the final invoices.*

11) *The Professional Fees line presents the U.S. Trustee's Fees for Q4 of 2023 and the estimated amount for Q1 of 2024.*

12) *The post-closing receipts and disbursements are captured in Week 4 of the Operating Budget.*